NO. 13-2320

In The

# United States Court of Appeals
For The Fourth Circuit

KIRBY B. MCZEKE,

Plaintiff-Appellant

v.

HORRY COUNTY,

Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA        AT FLORENCE DIVISION

APPELLEE'S RESPONSE BRIEF

Mark W. Buyck, III (#1613)
WILLCOX, BUYCK & WILLIAMS, P.A.
248 West Evans Street (29501)
Post Office Box 1909
Florence, South Carolina 29503

Counsel for Defendant-Appellee

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2320__    Caption: __Kirby McZeke v. Horry County__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Horry County__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☑ NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

10/28/2013 SCC                          - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Mark W. Buyck, III                    Date: 10/29/2013

Counsel for: Appellee

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on  October 29, 2013  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/Mark W. Buyck, III                                        10/29/2013
(signature)                                                  (date)

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ............................................................................ ii

STATEMENT OF THE FACTS ...................................................................... 1

    A.    September 25, 2008 Two-Day Suspension ....................................... 2

    B.    The Anton Graham Arrest Warrant ................................................. 5

SUMMARY OF THE ARGUMENT ................................................................ 7

ARGUMENT ..................................................................................................... 8

CONCLUSION ................................................................................................ 12

REQUEST FOR ARGUMENT ....................................................................... 12

CERTIFICATE OF COMPLIANCE FORM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Hill v. Lockheed Martin Logistics Mgmt., Inc.*,
     354 F.3d 277, 285 (4th Cir. 2004) ..................................................................8

*McDonnell Douglas Corp. v. Green*,
     411 U.S. 792 (1973)........................................................................................8

*St. Mary's Honor Ctr. v. Hicks*,
     509 U.S. 502, 506 .........................................................................................9

*Warch v. Ohio Cas. Ins. Co.*,
     435 F. 3d 510 (4th Cir. 2006) .......................................................................9

# STATEMENT OF THE FACTS

Shortly after graduating from high school in 1977, the Plaintiff, Kirby McZeke ("McZeke"), worked part-time at the Loris Magistrate Office under the auspices of a job training program. While not technically a County employee, she did many of the same duties which she would later perform as a full-time employee. JA 34-35. In 1984, after four (4) years in an intervening job, McZeke returned to the Loris County Magistrate Office as a full-time Administrative Assistant. JA 36. McZeke's supervisor for nearly her entire Horry County career was Judge Harry McDowell, a white male. JA 37. During her tenure at the office there were typically two full-time Administrative Assistants, one would handle the civil docket and the other the criminal matters. McZeke was assigned the criminal docket. JA 38. Judge McDowell served as the Loris Magistrate from January 1977 until his retirement on June 30, 2007. JA 87. Judge McDowell was very protective of McZeke and testified that he secured Judge Mark Harris's commitment to keep McZeke in her position until she was eligible to retire. JA 88-89.

Judge Harris was a 1979 graduate of Francis Marion University and worked in the South Carolina Probation Pardon and Parole Office in Horry County from 1985 until assuming the Loris Magistrate's job on July 1, 2008.

1

JA 65-66. For the one-year period between Judge McDowell's resignation and Judge Harris's election and installation, there was not a resident magistrate in the City of Loris. McZeke and a co-employee Vicki Aldridge ("Aldridge") continued to perform their daily duties with other county Magistrates appearing as needed to conduct court proceedings. Aldridge retired in approximately November of 2007 and for several months McZeke was the only daily presence in the Loris Magistrate Office. JA 41. In December 2007, Susan Johnson ("Johnson"), a white female, was transferred to the office to assume the job duties of Aldridge. JA 38-39. In July and August of 2008, Judge Harris spent most of his working time outside of the office undergoing training for his new duties. JA 40.

### A.    September 25, 2008 Two-Day Suspension

Shortly after assuming his full-time duties as Magistrate Judge, Judge Harris was presented with two incidents regarding inappropriate behavior of McZeke. In June of 2008, Officer Matthew Stephenson visited with McZeke in the Loris office. Officer Stephenson informed McZeke that he had an outstanding warrant on a local resident, Don Herring ("Herring"). McZeke informed Officer Stephenson that she knew Herring and that she was expecting him in her office as he was pursuing a civil matter at the time. Officer Stephenson instructed McZeke to alert him immediately upon Herring appearing at the office in order that he could serve the warrant at the Magistrate's office as

2

opposed to tracking him down, visiting his home, etc. JA 43-44. Herring did appear at the office within a day or two of the conversation with Officer Stephenson. Instead of alerting Officer Stephenson that Herring had come by the office, McZeke informed Herring that there was an outstanding warrant and that Officer Stephenson wished to serve him at the Magistrate's office. According to McZeke, Herring explained that his lawyer had "taken care of" the matter and that there should not be an outstanding warrant. McZeke claims that she advised Herring to visit the Solicitor's office the very next morning and take care of the matter. JA 45-46. She acknowledged that she never informed Officer Stephenson of her conversation with Herring. JA 47-48. Herring did not "take care of the matter" and on August 13, 2008, nearly two (2) months later, Officer Stephenson appeared at Herring's home at 6:00 a.m. to personally serve the warrant. Herring acknowledged to Officer Stephenson that he had discussed the existence of the warrant with McZeke. JA 70-72.

The other matter addressed in the September 2008 suspension stemmed from a home invasion involving McZeke's sister and brother-in-law's family. McZeke was not satisfied with the scope and pace of the police investigation of the matter. McZeke eventually contacted Lt. Kevin Duke and Cpt. Saundra Rhodes with the County Police Department. In each of those conversations, she expressed her dissatisfaction with the investigation and further threatened "to sue the hell out of Horry County Government." JA 42.

3

After reviewing the two incidents, Judge Harris determined that disciplinary action was appropriate. As he was new to his position, he contacted Chief Magistrate Whitley to discuss the matters. JA 73. Judge Harris determined that a two-day suspension was appropriate under the circumstances. Judge Harris did have extensive experience in serving warrants and testified that he had served hundreds while working for the Department of Probation, Parole, and Pardon Services.

> "It's easier to serve a person within an office setting than it is to serve him at a residence. The chance of confrontation is higher at the residence than it would be within the office and it's just an easier process to serve a warrant in a more secure setting than it is at a residence." JA 74.

In the write-up, Judge Harris described the violation as "divulging or misusing confidential information." He also noted "Ms. McZeke divulged information on a General Sessions Bench Warrant to the defendant." JA 28. Judge Harris further elaborated "I believe that she told him that he had a bench warrant and that he needed to go down and take care of it, which was not her place to say it. It was improper for her to divulge the information in the first place." The Disciplinary Report also indicated; **"Consequences should incident occur again: TERMINATION."** JA 75. In her response, also contained in JA 28, McZeke acknowledged the incident with Lt. Duke and stated "I'm in agreement with the abusive language suspension." Her written response also indicates that she acknowledges informing Herring of the warrant

4

and further acknowledges that she never contacted Officer Stephenson to alert him that she had done so. After receiving the suspension, McZeke "cleaned out my desk." "So whenever I got that suspension, I knew that I was gone." JA 49.

### B.  The Anton Graham Arrest Warrant

A second incident involving McZeke releasing information on a pending arrest warrant occurred in April 2009. On April 20, 2009, Officer Bernard Grate, a black male, appeared before Judge Harris requesting an arrest warrant for Anton Graham ("Anton"). Anton is the son of McZeke's best friend, Johnnie Mae Graham ("Graham"). JA 50-53. Officer Grate was assigned to the Drug Enforcement Task Force and had utilized a confidential informant in a drug buy involving Anton. Officer Grate and McZeke discussed Anton while Officer Grate was in the office on that date and apparently he also knew Anton and was aware of the family connection involving McZeke and the suspect's mother. JA 54-56.

According to McZeke, she prepared the arrest warrant and presented Officer Grate with a copy. McZeke alleges that shortly thereafter, Graham contacted her after Officer Grate had attempted to serve Anton at his mother's home. JA 57-58. McZeke acknowledges that she informed Graham that the warrant was for a drug related offense and she further advised her friend to convince her son to surrender to authorities. JA 59. McZeke further

5

acknowledges that she contacted Magistrate Judge Butler, the Bond Court Judge, regarding a reduced bond for the still at-large defendant. McZeke testified "I called Judge Butler and I said, Judge Butler, I said, if – if Johnnie Mae's son was to turn himself in today, could you give him a reduced bond?" JA 60-61. The Judge was noncommittal and in a subsequent telephone conversation, he advised McZeke to "just leave it alone." JA 61. Not only had McZeke divulged the nature of the arrest warrant, but she had further attempted to intervene with the setting of a bond for an at-large fugitive.

Anton did not immediately surrender. Judge Harris later learned that while he was still at-large, the confidential informant telephoned Officer Grate to inform him that Anton had contacted him and suspected that he was participating with law enforcement in securing Graham's arrest. JA 85-86. The matter was eventually referred to SLED for an investigation. McZeke provided a sworn statement to the SLED investigators in which she admitted to informing Graham that the arrest warrant involved drug charges. She further acknowledges that she discussed the bond with Judge Butler. JA 30-32.

Judge Harris was now presented with a second incident involving McZeke divulging warrant information to unserved criminal defendants. Judge Harris testified that he put considerable thought into what course of action he should take. JA 76-84. One option he considered was transferring McZeke to

6

the traffic court; however, the Director of Public Works would not approve a transfer due to the nature of the offense. JA 82. Judge Harris consulted with Judge Whitley who recommended termination. Judge Harris then determined that he would give McZeke the option to resign her position which would not foreclosure future employment with Horry County, an option not available if McZeke was terminated. JA 83.

On August 18, 2009, Judge Harris met with McZeke and informed her of his decision. JA 62-63, 83-84. McZeke requested the rest of the day to consider her options; however, she did not notify Judge Harris of her decision. JA 64. The next day, McZeke appeared for work and again met with Judge Harris. She informed him that she would not voluntarily resign. He informed her that she was terminated and presented her with a termination letter. JA 33. McZeke's position in the office was filled by Karen Maldett, a white female, who transferred from another office in the County. JA 67-69.

## SUMMARY OF THE ARGUMENT

The District Court correctly found that McZeke failed to establish a *prima facie* case of race discrimination as it was clear that the Plaintiff was not performing her job duties at a level that met her employer's legitimate expectations at the time of her termination.

## ARGUMENT

McZeke did not present any direct evidence of race discrimination and proceeded under the indirect evidence burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). It is the plaintiff's initial burden to establish a *prima facie* case of race discrimination by showing that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duty at a level that met her employer's legitimate expectations at the time of the adverse employment action; and, (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). In this case, the parties conceded that McZeke met her burden to establish the first, second and fourth elements of her *prima facie* case. The District Court correctly noted that McZeke failed to meet the third prong of the *prima facie* case in that she was not performing her job duties at a level that met her employer's legitimate expectation at the time of the termination.

In her argument, McZeke points to twenty-seven (27) years of satisfactory job performance in an attempt to satisfy her burden of proof. McZeke seeks to minimize incidents occurring in her final year of employment which ultimately led to her termination. The County recognizes

that McZeke's burden of production is not onerous; however, she is required to prove by the preponderance of the evidence the existence of a *prima facie* case of race discrimination. *Warch v. Ohio Cas. Ins. Co.*, 435 F. 3d 510 (4th Cir. 2006). See also, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506.

McZeke's assertions that she may have met Judge McDowell's expectations or even Judge Livingston's perceived expectations is not availing in establishing her *prima facie* case. McZeke at the time of her termination worked directly for Judge Harris who had the ultimate authority to terminate her employment. Judge Harris established his legitimate expectations for how his employees would conduct themselves in their dealings with the public as well as law enforcement personnel. Rather than accept Judge Harris's wishes to maintain the confidentiality of warrant information, McZeke essentially argues that this is not how Judge McDowell handled these matters.

In September 2008, Judge Harris issued McZeke a two-day suspension based on two separate incidents. As part of his counseling, Judge Harris issued McZeke a written disciplinary report. In the report Judge Harris described the policy violation involving Herring as "divulging or misusing confidential information." In the Supervisor's Statement found on the second page of the report, Judge Harris states "Ms. McZeke divulged information on a General Session Bench Warrant to the defendant." He further noted that the

9

consequences should a similar incident occur again was termination. The District Court properly found that the September 2008 disciplinary report put McZeke on notice that she was not to divulge any information regarding bench warrants.

Horry County readily admits that Judge Harris and former Magistrate McDowell may have had different expectations regarding the handling of warrants as well as other aspects of running their offices; however, Judge McDowell retired more than a year prior to McZeke's first warning and had been retired two years when she was terminated. Judge Harris was in charge of the Loris Magistrate's Office. Judge Harris stressed confidentiality within the office particularly with regards to the service of warrants, a task he was keenly familiar with after having served twenty-three (23) years with the South Carolina Probation Pardon and Parole Department. While there may be a question of fact regarding whether McZeke was aware of Judge Harris's expectations regarding the confidentiality of warrants prior to September 2008, once she received her initial disciplinary action and was suspended, Judge Harris's expectations were crystal clear.

In April 2009, eight (8) months after her suspension from disclosing the existence of the Herring warrant, McZeke participated in the preparation of a criminal warrant against Anton, her best friend's son. McZeke readily

10

acknowledged discussing not only the existence of the warrant but also the underlying drug related charges with Graham prior to the service of the warrant on her son. The complaint which ultimately led to McZeke's termination was initiated by a law enforcement officer who believed that McZeke's action had compromised the identity of a confidential drug informant. JA 54-56.

A few days after McZeke prepared the Anton warrant, Graham called McZeke and told her that the cops came by her house with an arrest warrant for her son, searched the premises, and said to have her son contact them. McZeke told Graham that the warrant involved drug charges – a fact unknown to the defendant's mother. The District Court cited directly to McZeke's deposition in noting that she was fully aware that the warrant involved drug charges and a confidential informant. JA 301. The District Court noted McZeke's description of her conversation with the criminal defendant's mother in her deposition.

> Q. Alright. She asked you what it was about. What did you tell her?
>
> A. I told her – she asked me in confident [sic] what it was about and I told her, you know.
>
> Q. What did you tell her?
>
> A. I told her it was a drug warrant. That's what I told her.

The District Court correctly notes McZeke's acknowledgment in her own deposition that the question posed to her regarding the nature of the warrant was made in confidence. McZeke did not meet Judge Harris's legitimate expectations regarding her job performance. Judge Harris had addressed a similar matter with McZeke within the year and clearly listed termination as the consequence of disclosing information contained in arrest warrants. McZeke failed to show satisfactory job performance and thus failed to establish a *prima facie* case of race discrimination. Due to McZeke's failure to establish a *prima facie* case, the District Court's Order granting Horry County's Motion for Summary Judgment should be affirmed.

## CONCLUSION

The Appellee respectfully requests that the Order of the District Court granting summary judgment be AFFIRMED.

## REQUEST FOR ARGUMENT

Pursuant to Local Rule 34(a), the Defendant-Appellee believes that oral argument is unnecessary in that the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

Respectfully submitted,

WILLCOX, BUYCK & WILLIAMS, P.A.

BY: ____s/Mark W. Buyck, III_____
      Mark E. Buyck, III (#1613)
      248 West Evans Street (29501)
      Post Office Box 1909
      Florence, South Carolina 29503
      Phone: 843-662-3258
      Fax: 843-662-1342

Attorneys for Defendant-Appellee

July 9, 2014
Florence, SC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>13-2320</u>     Caption: <u>McZeke v. Horry County</u>

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]   this brief contains <u>   2654   </u> [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]   this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2010</u> [*identify word processing program*] in <u>Times New Roman 14 pt</u> [*identify font size and type style*]; **or**

   [ ]   this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) <u>Mark W. Buyck, III</u>

Attorney for <u>Horry County</u>

Dated: <u>July 9, 2014</u>

# CERTIFICATE OF SERVICE

I certify that on July 9, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

J. Lewis Cromer
Julius W. Babb, IV
J. Lewis Cromer & Associates, L.L.C.
P.O. Box 11675
Columbia, S.C. 29211

Attorneys for Plaintiff-Appellant

| s/Mark W. Buyck, III | July 9, 2014 |
| --- | --- |
| Signature | Date |